IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| ANDRITZ INC.,<br>     Plaintiff,<br><br>v.<br><br>SOUTHERN MAINTENANCE<br>CONTRACTOR, LLC,<br>WILLIAM PETTIT, and<br>ROGER HARPER, JR.,<br>     Defendants. | CASE NO.   3:08-cv-44 (CDL)<br>_____<br><br>*JURY TRIAL DEMANDED* |

## **COMPLAINT**

Plaintiff Andritz Inc. ("Andritz"), for its Complaint against Defendants Southern Maintenance Contractor, LLC ("SMC"), William Pettit ("Pettit"), and Roger Harper, Jr., ("Harper, Jr.") (collectively "Defendants"), states as follows:

### **NATURE OF THIS ACTION**

1.

Andritz is a contract provider of, among other things, maintenance and repair services for woodyard equipment to its customers in the pulp and paper industries. Pettit and Harper, Jr. were employed by Andritz prior to December 2007 and were involved in selling and providing woodyard services to customers of Andritz. Between 2004 and late 2007, SMC provided Andritz with additional labor that sometimes is required by Andritz in providing woodyard services to its customers.

2.

In late 2007, while Pettit and Harper, Jr. were still Andritz employees, Andritz discovered that SMC was competing with Andritz and that Pettit and Roger Harper, Sr. ("Harper, Sr."), a former Andritz employee, had an interest in SMC. Andritz confronted Pettit with this information, and in December 2007, Pettit and Harper, Jr. abruptly resigned their employment with Andritz. Pettit and Harper, Jr. now are affiliated with SMC.

3.

Andritz brings this action to recover, and to prevent the unauthorized use of, its trade secrets and other confidential and proprietary information, which were, upon information and belief, improperly and unlawfully taken by Pettit and Harper, Jr. and provided to SMC in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Georgia Trade Secrets Act, the common law of Georgia, and the contractual duties that Pettit and Harper, Jr. owe to Andritz. Andritz also brings this action to recover, and to prevent the unauthorized use of, valuable and specialized custom tools, which are the property of Andritz, and which SMC has refused to return to Andritz. In addition, Andritz seeks monetary relief for the losses that it has incurred, and the amounts by which Defendants have been enriched unjustly, as a result of Defendants' unlawful conduct.

## THE PARTIES

### 4.

Andritz is a corporation organized and existing pursuant to the laws of Delaware and maintains its principal place of business in Fulton County, Georgia.

### 5.

SMC is a limited liability company organized and existing pursuant to the laws of Georgia and maintains its principal place of business in Spalding County, Georgia.

### 6.

Pettit is an individual and resides in Walton County, Georgia.

### 7.

Harper, Jr. is an individual and resides in Pike County, Georgia.

## JURISDICTION AND VENUE

### 8.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367(a).

### 9.

SMC is subject to jurisdiction of this Court because it maintains a place of business in Georgia, does business in Georgia, is authorized to do business in Georgia, and is a citizen of Georgia.

10.

Pettit and Harper, Jr. are subject to the jurisdiction of this Court because they reside in, and are citizens of, Georgia.

11.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### <u>Andritz's Employment of Pettit and Harper, Jr.</u>

12.

Pettit was employed by Andritz and/or its predecessors for approximately 17 years.

13.

In connection with his employment with Andritz, Pettit entered into several contracts with Andritz, including:

(a)  An Employment Agreement dated August 15, 1990 (the "Pettit Employment Agreement"), a true and correct copy which is attached hereto as Exhibit A;

(b)  An Agreement with Respect to Inventions dated August 22, 1990 (the "Pettit Intellectual Property Agreement"), a true and correct copy of which is attached hereto as Exhibit B; and

(c)    A Confidentiality and Secrecy Agreement dated September 17, 1990 (the "Pettit Confidentiality Agreement"), a true and correct copy of which is attached hereto as Exhibit C.

In these contracts, Pettit agreed that he would not disclose the trade secrets or other confidential or proprietary information of Andritz to unauthorized persons, that he would not use the trade secrets or other confidential or proprietary information of Andritz for unauthorized purposes, and that, in the event that his employment with Andritz terminated, he would promptly deliver to Andritz any documents that contain the confidential or proprietary information of Andritz, and all copies thereof, in his possession.

14.

Harper, Jr. was employed by Andritz and/or its predecessors for approximately seven years.

15.

In connection with his employment with Andritz, Harper, Jr. entered into several contracts with Andritz, including:

(a)    An Employment Agreement dated September 14, 2000 (the "Harper, Jr. Employment Agreement"), a true and correct copy which is attached hereto as Exhibit D; and

(b)     A Confidentiality Undertaking Agreement dated September 14, 2000 (the "Harper, Jr. Confidentiality Agreement"), a true and correct copy which is attached hereto as Exhibit E.

In these contracts, Harper, Jr. agreed that he would not disclose the trade secrets or other confidential or proprietary information of Andritz to unauthorized persons, that he would not use the trade secrets or other confidential or proprietary information of Andritz for unauthorized purposes, and that, in the event that his employment with Andritz terminated, he would deliver to Andritz any documents that contain the confidential or proprietary information of Andritz, and all copies thereof, in his possession.

16.

Andritz employed Pettit and Harper, Jr. as Service and Sales Technicians in its Wood Processing Division.   As Service and Sales Technicians in the Wood Processing Division, Pettit and Harper, Jr. were responsible for, among other things, marketing the woodyard services that Andritz provides to its customers, identifying potential customers and potential business opportunities with existing customers, drafting proposals for the sale of woodyard services to customers, negotiating the terms and conditions under which Andritz would sell woodyard services to its customers, and managing the provision of woodyard services to customers.

17.

Andritz employed Pettit in a supervisory and management position. In addition to his other responsibilities as a Service and Sales Technician, Pettit was responsible for managing other Service and Sales Technicians in the Wood Processing Division, including Harper, Jr., arranging for the purchase or rental of equipment necessary for Andritz to provide woodyard services to its customers, supervising and managing the relationship between Andritz and certain of its subcontractors and vendors, and supervising the management of woodyard services projects. By virtue of his additional supervisory and management responsibilities, Pettit held a position of trust with Andritz.

### Andritz's Relationship with SMC

18.

From time to time, Andritz requires additional labor to provide certain woodyard services to its customers. In or before 2004, Andritz decided to outsource its additional labor requirements to a labor broker, which would employ or otherwise engage the additional labor required from time to time by Andritz.

19.

Around the time that Andritz decided to engage a labor broker, Harper, Sr., who at that time still was employed by Andritz, and Pettit devised a scheme to profit from this decision by offering labor broker services to Andritz through an entity in which

- 7 -

they had an interest without disclosing to Andritz their affiliation with, or interest in,
such entity. In furtherance of this scheme, Harper, Sr. and Pettit formed SMC in May
2004.

20.

In 2004, Harper, Sr. recommended to Andritz that it engage SMC as its labor
broker. Andritz followed this recommendation and began to use SMC as a labor
broker. Between 2004 and late 2007, Andritz used SMC as a labor broker on
numerous occasions and paid substantial fees to SMC for its services as a labor
broker. During the time that Andritz used SMC as a labor broker, Andritz was
unaware that Harper, Sr. and Pettit were affiliated with, and had an interest in, SMC.

21.

At some time between 2004 and late 2007, SMC began to compete with Andritz
by selling and offering to sell woodyard services to customers and potential customers
of Andritz. During the time that Andritz used SMC as a labor broker, Andritz was
unaware that SMC was competing with Andritz in the sale of woodyard services.

22.

As an Andritz employee, Pettit was responsible for supervising the relationship
between Andritz and SMC. Among other things, Pettit arranged for SMC to provide
Andritz with additional labor from time to time, and Pettit approved for payment
various invoices submitted to Andritz by SMC.

23.

Pettit did not disclose to Andritz that he and Harper, Sr. were affiliated with, and had an interest in, SMC. Pettit further did not disclose to Andritz that SMC was competing with Andritz in the sale of woodyard services. Pettit owed a duty to disclose to Andritz his own relationship with SMC and that SMC was competing with Andritz in the sale of woodyard services.

24.

In late 2007, Andritz learned for the first time that Harper, Sr. and Pettit were affiliated with, and had an interest in, SMC and that SMC was competing with Andritz in the sale of woodyard services. Thereafter, Andritz ceased to use SMC as a labor broker.

25.

In late 2007, Andritz confronted Pettit with the information it learned about his affiliation with, and interest in, SMC. Pettit falsely denied that he had an interest in SMC.

26.

Soon thereafter, on December 5, 2007, Pettit abruptly resigned his employment with Andritz.

27.

On December 14, 2007, Harper, Jr. resigned his employment with Andritz.

28.

Pettit and Harper, Jr. now both are employed by, or otherwise affiliated with, SMC.

### Defendants' Misappropriation of
### Andritz's Trade Secrets and Other Confidential Information

29.

The woodyard services that Andritz sells and provides to its customers often involve the replacement of, repair of, or manufacture and installation of replacement parts for, certain heavy equipment used in the pulp and paper industry.  As a result, Andritz uses various technical drawings, blueprints, and specifications of such heavy equipment, and the components thereof, as well as other documents containing trade secrets and other confidential and proprietary information in connection with its woodyard services business.

30.

For instance, Andritz creates technical drawings, blueprints, and specifications for custom woodyard equipment that Andritz designs, sells, and provides to its customers.  Andritz employees use these drawings, blueprints, and specifications in the sale and provision of woodyard services to the extent that the services involve the repair or replacement of woodyard equipment designed by Andritz.

31.

In addition, Andritz sometimes creates technical drawings, blueprints, and specifications through a legitimate reverse-engineering process for parts to replace components of woodyard equipment designed by persons other than Andritz. Andritz employees use these drawings, blueprints, and specifications in the sale and provision of woodyard services to the extent that the services involve the repair or replacement of woodyard equipment designed by persons other than Andritz.

32.

These drawings, blueprints, and specifications reflect the design and analysis of woodyard equipment, or components thereof, and contain sensitive proprietary information that is the intellectual property of Andritz. These materials are created by Andritz with substantial effort and at significant expense.

33.

These drawings, blueprints, and specifications would be valuable to a competitor of Andritz, such as SMC. In particular, a competitor of Andritz could use such information to manufacture and sell woodyard equipment, or to provide woodyard services, to potential customers of Andritz without incurring the significant engineering costs that otherwise would have to be incurred in the design and production of such materials or the provision of such services. As a result, such information could improve the ability of a competitor of Andritz to compete with

Andritz for existing and new business involving the manufacture or service of woodyard equipment.

34.

In addition to the technical drawings, blueprints, and specifications described above, Andritz also creates and maintains other documents important to its woodyard services business that contain other sensitive and proprietary information. Among other things, Andritz creates and maintains spreadsheets and other documents containing confidential financial data and formulae that are used by Andritz in the preparation of proposals and bids and documents reflecting confidential and proprietary manufacturing, installation, and repair techniques, processes, and procedures. Documents containing such information would be valuable to a competitor of Andritz, such as SMC.

35.

To safeguard the confidential and proprietary information of Andritz described above, Andritz secures and limits access to drawings, blueprints, specifications, and other documents containing such information. Among other things, Andritz maintains these drawings, blueprints, specifications, and other documents in electronic form in various electronic databases contained on a secure data network, which requires use of a user identification and password to access, and Andritz limits access to particular databases to employees who, as a result of their duties and responsibilities, have a

legitimate need to access the information stored in the particular folder or database. To the extent that Andritz maintains such drawings, blueprints, specifications, and other documents in hard-copy form, Andritz maintains the hard copies in secure, controlled access facilities that are not open to the public. Andritz also labels these materials as containing confidential and proprietary information of Andritz. Furthermore, Andritz enters into agreements with certain employees, who are permitted to access confidential and proprietary information, that require the employees to keep confidential, to not disclose to any unauthorized person, and to not use for any unauthorized purpose any such confidential or proprietary information and that require the employees to return documents containing such information to Andritz upon the termination of their employment.

36.

The measures undertaken by Andritz to safeguard the secrecy of the information described above are reasonable under the circumstances.

37.

The information described above constitutes trade secrets, as that term is defined in the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.*, because such information:

a.    Is not commonly known by or available to the public;

b.    Has actual or potential economic value to Andritz and its competitors;

c.      Derives its economic value from the fact that it is not generally known to, and is not readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure of use; and

d.      Is the subject of measures to preserve and maintain its secrecy that are reasonable under the circumstances.

Because such information constitutes trade secrets under the Georgia Trade Secrets Act, such information is described hereinafter as the "Trade Secrets."

38.

To the extent that any of the information described above does not constitute trade secrets, as that term is defined in the Georgia Trade Secrets Act, such information nevertheless is sensitive and confidential proprietary information that is the intellectual property of Andritz.  Such information is entitled to protection under principles of the common law and equity, and such information is described hereinafter as the "Confidential Information."

39.

During their employment with Andritz and/or its predecessors and by virtue of their duties and responsibilities as employees of Andritz, Pettit and Harper, Jr. had a need, and were permitted, to access drawings, blueprints, specifications, and other documents containing the Trade Secrets and/or Confidential Information.  Pettit and Harper, Jr. were obligated, and had a duty, to maintain the secrecy of such Trade

Secrets and/or Confidential Information, and to not disclose the Trade Secrets and/or Confidential Information to unauthorized persons or to use the Trade Secrets and/or Confidential Information for unauthorized purposes, including to compete against Andritz.

40.

Upon information and belief, Pettit and Harper, Jr. took numerous documents containing the Trade Secrets and/or Confidential Information for the benefit of SMC and thereafter provided and disclosed such documents to SMC or otherwise misappropriated and used such documents for the benefit of SMC. Pettit and Harper, Jr. were not authorized by Andritz to request, obtain, or take such documents for the benefit of SMC, and they were not authorized by Andritz to provide or disclose such documents to SMC or otherwise to use such documents for the benefit of SMC.

41.

More specifically, in November 2007, Harper, Jr. obtained certain technical drawings, blueprints, and specifications for woodyard equipment located at a facility owned and operated by an Andritz customer in Augusta, Georgia. Harper, Jr. obtained these drawings, blueprints, and specifications in electronic form by his use of the secure data network of Andritz. These drawings, blueprints, and specifications contain Trade Secrets and/or Confidential Information. At that time, Andritz had a

- 15 -

pending proposal to sell and provide woodyard services to the same customer at its facility in Augusta.

42.

SMC proposed to sell and provide woodyard services to the same customer at its facility in Augusta, and the customer agreed to purchase woodyard services from SMC. Upon information and belief, Harper, Jr. provided and disclosed the drawings, blueprints, and specifications described in the preceding paragraph to or for the benefit of SMC, and SMC has used, or is using, these drawings, blueprints, and specifications to sell and provide woodyard services to the same customer at its facility in Augusta that are the same, or substantially similar to, the services that Andritz offered to sell and provide to the customer. SMC could not provide at least some of these woodyard services without the use of drawings, blueprints, and specifications obtained from Andritz or without substantial effort and incurring significant expense.

43.

In November 2007, Pettit inquired about the particular database and/or electronic folder in which Andritz maintains technical drawings, blueprints, and specifications for woodyard equipment located at a facility owned and operated by another Andritz customer in Stevenson, Alabama. Upon information and belief, Pettit obtained these drawings, blueprints, and specifications in electronic form by his use of

the secure data network of Andritz. These drawings, blueprints, and specifications contain Trade Secrets and/or Confidential Information. At that time, Andritz had offered to sell and provide woodyard services to the same customer at its facility in Stevenson.

44.

SMC proposed to sell and provide woodyard services to the same customer at its facility in Stevenson, and the customer agreed to purchase woodyard services from SMC. Upon information and belief, Pettit provided and disclosed the drawings, blueprints, and specifications described in the preceding paragraph to or for the benefit of SMC, and SMC has used, or is using, these drawings, blueprints, and specifications to sell and provide woodyard services to the same customer at its facility in Stevenson that are the same as, or substantially similar to, some of the woodyard services that Andritz offered to sell and provide to the customer. SMC could not provide at least some of these woodyard services without the use of drawings, blueprints, and specifications obtained from Andritz or without substantial effort and incurring significant expense.

45.

Furthermore, on December 17 and 19, 2007, after his resignation and using Andritz's laptop computer, Harper, Jr. accessed certain documents containing Andritz

financial and bid information as well as technical drawings, blueprints, and specifications.

46.

Harper, Jr. was not authorized by Andritz to access or possess the documents described in paragraph 45 above, or to use Andritz's laptop computer in any manner at that time. Harper, Jr. had no legitimate reason to access or possess these documents at that time.

47.

Upon information and belief, Pettit and Harper, Jr., since their employment with Andritz terminated, have retained and have failed to return to Andritz numerous other drawings, blueprints, specifications, and other documents containing Trade Secrets and/or Confidential Information. Andritz did not authorize Pettit or Harper, Jr. to retain any such documents.

48.

Defendants' continuing possession, use, and misappropriation of the Trade Secrets and/or Confidential Information poses a risk of imminent and irreparable harm to Andritz. Among other things, it poses a risk that SMC will use such Trade Secrets and/or Confidential Information to offer to sell, to sell, and to provide woodyard services to customers and potential customers of Andritz that SMC would not otherwise be capable of selling and providing, causing Andritz to lose the goodwill of

its customers and potential customers. It also poses a risk of further dissemination, disclosure, and destruction of the value of the Trade Secrets and/or Confidential Information, which would impair the ability of Andritz to protect such information under the Georgia Trade Secrets Act and the common law.

### Defendants' Unauthorized Possession and Use of Andritz's Specialized Tools

#### 49.

Andritz owns certain valuable and specialized custom tools and uses such tools in its woodyard services business.

#### 50.

During the time that Andritz used SMC as a labor broker, and at Pettit's direction, Andritz permitted SMC to possess and keep certain of its valuable and specialized tools that labor provided by SMC could use in performing work for Andritz related to its provision of woodyard services to its customers.

#### 51.

In late 2007, when Andritz learned that SMC was competing with Andritz in the sale of woodyard services, Andritz directed Pettit that SMC was to return to Andritz all of its tools.

#### 52.

SMC thereafter returned to Andritz some of its tools and represented to Andritz that SMC had returned all such tools. SMC has retained, however, several valuable

and specialized tools that are the property of Andritz.  The Andritz tools improperly

retained by SMC have a value of approximately $75,000.

53.

To conceal its continuing possession of these tools, SMC directed the removal

from these tools of plates bearing the manufacturer's serial numbers.

54.

Upon information and belief, SMC, without the authorization of Andritz, is

using Andritz tools to sell and provide woodyard services in competition with Andritz.

SMC could not provide at least some of these services without the use of Andritz tools

or without incurring significant costs to procure similar tools.

55.

Defendants' continuing possession, use, and conversion of these valuable and

specialized tools poses a risk of imminent and irreparable harm to Andritz.  Among

other things, many of these tools are ones normally used  by Andritz to provide certain

woodyard services to its customers.  Moreover, many of the tools are unique in that

they were custom-made for Andritz and are difficult to replace due  to the high cost

and the extended lead time required to receive them.  Defendants' continuing wrongful

possession and conversion of these tools deprives Andritz of their use, poses a risk

that the tools will be damaged or become unusable, and gives SMC and unjust

competitive benefit or advantage.

**COUNT ONE**
**VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. § 1030(a)(4)**
**(Against All Defendants)**

56.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

57.

The secure data network on which Andritz maintains its technical drawings, blueprints, and specifications in electronic form, which contain its Trade Secrets and/or Confidential Information, is a network of computers used in interstate and foreign commerce and communications. During their employment with Andritz, Pettit and Harper, Jr. were authorized by Andritz to access this secure data network only for the purpose of performing work on behalf of Andritz.

58.

During their employment with Andritz, Andritz provided Pettit and Harper, Jr. with laptop computers, which are computers used in interstate and foreign commerce and communications. Pettit and Harper, Jr. were authorized by Andritz to use these computers only for the purpose of performing work on behalf of Andritz. These computers allowed Pettit and Harper, Jr. to, among other things, access the secure data network maintained by Andritz.

59.

Upon information and belief, Pettit and Harper, Jr. knowingly accessed their laptop computers and the secure data network maintained by Andritz for the purpose of acquiring and obtaining drawings, blueprints, and specifications containing Trade Secrets and/or Confidential Information for the benefit of, and on behalf of, SMC. Such access was without authorization and/or in excess of their authorized access. Pettit and Harper, Jr. accessed their laptop computer and the secure data network maintained by Andritz with intent to defraud Andritz.

60.

By means of their conduct described above, Pettit and Harper, Jr. furthered their intended fraud and obtained valuable drawings, blueprints, specifications, and other Andritz materials containing Trade Secrets and/or Confidential Information.

61.

Pettit and Harper, Jr. violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), by their conduct described above.

62.

Pettit and Harper, Jr. engaged in the conduct described above as agents of, on behalf of, and for the benefit of SMC.

63.

Andritz has suffered damage and loss by reason of, and as a proximate result of, the conduct in violation of the Computer Fraud and Abuse Act described above, and the value of such loss to Andritz exceeds $5,000 for a one-year period.

64.

Andritz is entitled to injunctive relief to restrain and prohibit the Defendants from further violations of the Computer Fraud and Abuse Act with respect to any computer or computer network of Andritz, and to restrain and prohibit each of them from further use of any document or information obtained from Andritz by their violation of the Computer Fraud and Abuse Act.

65.

Andritz is further entitled to recover its damages and losses incurred by reason of Defendants' violation of the Computer Fraud and Abuse Act, in an amount to be proven at trial.

**COUNT TWO
MISAPPROPRIATION OF TRADE SECRETS
(Against All Defendants)**

66.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

67.

The Trade Secrets constitute trade secrets, as that term is defined in O.C.G.A. § 10-1-761(4).

68.

Upon information and belief, Pettit and Harper, Jr., on behalf of SMC, misappropriated Trade Secrets that they obtained in the course of their employment with Andritz.

69.

Upon information and belief, SMC, or persons affiliated with, and acting on behalf of, SMC misappropriated the Trade Secrets by acquiring the Trade Secrets with knowledge and a reason to know that they were acquired by improper means, including breach of the duties that Pettit and Harper, Jr. owed and still owe to Andritz to maintain the secrecy of the Trade Secrets.

70.

The misappropriation of Trade Secrets by SMC, Pettit, and Harper, Jr. is willful and malicious.

71.

Andritz has been injured as a proximate result of the misappropriation of Trade Secrets by SMC, Pettit, and Harper, Jr.

72.

SMC, Pettit, and Harper, Jr. have been unjustly enriched as a proximate result of their misappropriation of Trade Secrets.

73.

Andritz is entitled to injunctive relief (a) restraining and prohibiting SMC, Pettit, and Harper, Jr. from retaining, disclosing, disseminating, using, or otherwise misappropriating the Trade Secrets and unfairly competing with Andritz using the Trade Secrets, and (b) compelling them to return the Trade Secrets to Andritz.

74.

Andritz is further entitled to actual damages and disgorgement of amounts by which Defendants were unjustly enriched, in amounts to be proven at trial, as well as exemplary damages.

## COUNT THREE
## CONVERSION OF CONFIDENTIAL INFORMATION
### (Against All Defendants)

75.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

76.

The Confidential Information is the intellectual property of Andritz.

77.

Upon information and belief, SMC, Pettit, and Harper, Jr. have without authority assumed and exercised the right of ownership of the Confidential Information.

78.

The conversion of the Confidential Information by SMC, Pettit, and Harper, Jr. is willful and malicious.

79.

Andritz has been injured as a proximate result of the conversion of the Confidential Information by SMC, Pettit, and Harper, Jr.

80.

Andritz is entitled to injunctive relief (a) restraining and prohibiting SMC, Pettit, and Harper, Jr. from retaining, disclosing, disseminating, using, or otherwise misappropriating the Confidential Information and unfairly competing with Andritz using the Confidential Information, and (b) compelling them to return the Confidential Information to Andritz.

81.

Andritz is entitled to recover compensatory damages in an amount to be proven at trial and punitive damages.

## COUNT FOUR
## CONVERSION OF ANDRITZ'S TOOLS
### (Against SMC)

### 82.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

### 83.

SMC has possessed, and continues to possess, valuable and specialized custom tools that are the property of Andritz.  Andritz has demanded that SMC return these tools.  SMC has failed and refused to return all the tools.

### 84.

SMC has without authority assumed and exercised the right of ownership of Andritz's valuable and specialized tools.

### 85.

The conversion of Andritz's valuable and specialized tools by SMC is willful and malicious.

### 86.

Andritz has been injured as a proximate result of the conversion of the valuable and specialized tools by SMC.

87.

Andritz is entitled to injunctive relief or, in the alternative, a writ of replevin compelling SMC to immediately cease using such tools and to return such tools to Andritz.

88.

Moreover, Andritz is entitled to recover from SMC the actual damages incurred by Andritz as a proximate result of the conversion of its tools and to recover the fair and reasonable value of the use of its tools during the time they were unlawfully retained by SMC, in amounts to be proven at trial.

## COUNT FOUR
## BREACH OF CONTRACT
### (Against Pettit and Harper, Jr.)

89.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

90.

Pettit and Harper, Jr. entered into various contracts with Andritz whereby Pettit and Harper, Jr. each promised and agreed that he would not disclose the Trade Secrets or other Confidential Information of Andritz to unauthorized persons, that he would not use the Trade Secrets or other Confidential Information of Andritz for unauthorized purposes, and that, in the event that his employment with Andritz

terminated, he would deliver to Andritz any documents that contain the Trade Secrets and Confidential Information of Andritz, and all copies thereof, in his possession.

91.

Upon information and belief, Pettit and Harper, Jr. each has breached his respective contracts with Andritz by disclosing the trade secrets and other confidential and proprietary information of Andritz to unauthorized persons, including SMC.

92.

Upon information and belief, Pettit and Harper, Jr. each has breached his respective contracts with Andritz by using the trade secrets and other confidential and proprietary information of Andritz for unauthorized purposes, including for the benefit of SMC and to compete with Andritz.

93.

Upon information and belief, Pettit and Harper, Jr. each has breached his respective contracts with Andritz by retaining, and by failing and refusing to deliver to Andritz, upon the termination of their employment, documents containing the confidential or proprietary information of Andritz.

94.

Andritz has been injured by reason of the breaches of contract by Pettit and Harper, Jr..

95.

Andritz is entitled to injunctive relief (a) restraining and prohibiting Pettit and Harper, Jr. each from retaining, disclosing, disseminating, using, or otherwise misappropriating the trade secrets or other confidential and proprietary information of Andritz and competing unfairly with Andritz using its trade secrets and confidential and proprietary information, and (b) compelling each of them to return to Andritz any documents containing such trade secrets or other confidential and proprietary information.

96.

Andritz is entitled to recover damages in an amount to be proven at trial from Pettit and from Harper, Jr. for their respective breaches of contract.

**COUNT FIVE**
**BREACH OF DUTY OF LOYALTY AND GOOD FAITH**
**(Against Pettit and Harper, Jr.)**

97.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

98.

During their employment with Andritz, Pettit and Harper, Jr. each owed Andritz a duty of loyalty and good faith.

99.

Pettit breached his duty of loyalty and good faith by failing to disclose to Andritz his affiliation with, and his interest in, SMC.

100.

Pettit breached his duty of loyalty and good faith by failing to disclose to Andritz that SMC was competing with Andritz in the sale of woodyard services.

101.

Upon information and belief, Pettit and Harper, Jr. each breached his duty of loyalty and good faith by converting Andritz's Trade Secrets and Confidential Information to his own use and the use of SMC.

102.

Upon information and belief, Pettit and Harper, Jr. each breached his duty of loyalty and good faith by learning of potential business opportunities for Andritz, failing to diligently pursue those opportunities for Andritz, and pursuing those opportunities for SMC in competition with Andritz, all while still employed by Andritz.

103.

Andritz has been injured as a proximate result of the breach of the duty of loyalty and good faith by Pettit and Harper, Jr.

104.

The breach of the duty of loyalty and good faith by Pettit and Harper, Jr. was willful and malicious.

105.

Andritz is entitled to recover compensatory damages, in an amount to be proven at trial, and punitive damages from Pettit and Harper, Jr.

## COUNT SIX
## UNJUST ENRICHMENT
### (Against All Defendants)

106.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

107.

Upon information and belief, Defendants have been enriched as a result of their misappropriation, conversion, and use of the Confidential Information of Andritz.

108.

Upon information and belief, SMC has been enriched as a result of its conversion and use of the valuable and specialized tools of Andritz.

109.

Upon information and belief, Defendants have been enriched as a result of the breaches of duties owed to Andritz by Pettit and Harper, Jr.

110.

The retention of the amounts by which Defendants have been enriched as a result of their unlawful conduct, and the unlawful conduct of persons affiliated with them and acting on their behalf, is contrary to the principles of fairness, justice and equity.

111.

Andritz is entitled to recover from Defendants the amounts by which Defendants have been enriched as a result of their unlawful conduct and the unlawful conduct of persons affiliated with them and acting on their behalf.

**COUNT SEVEN**
**EXPENSES OF LITIGATION**
**(Against All Defendants)**

112.

Andritz restates and incorporates herein by reference the allegations contained in paragraphs 1 through 55 above.

113.

Defendants have acted in bad faith and have put Andritz to unnecessary trouble and expense.

114.

By their outright theft of Trade Secrets and/or Confidential Information from Andritz, and by their criminal conduct in violation of the Computer Fraud and Abuse

Act, Defendants have demonstrated the requisite bad faith for recovery of litigation expenses, including attorneys' fees and costs.

115.

Andritz is entitled to all its litigation expenses incurred in bringing and prosecuting this action, including, but not limited to attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Andritz hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Andritz respectfully prays that this Court enter judgment on each Count in its favor and against Defendants, jointly and severally as to Counts One, Two, Three, Six and Seven, and award Andritz the following relief:

A. A temporary restraining order, preliminary injunction and/or permanent injunction prohibiting Defendants from further taking, acquiring, disclosing, using in any way, otherwise misappropriating, or attempting to do any such thing with respect to, the Trade Secrets and Confidential Information;

B. A temporary restraining order, preliminary injunction and/or permanent injunction prohibiting Defendants from competing unfairly with Andritz

- 34 -

based in any way on their knowledge and/or use of the Trade Secrets and Confidential Information:

C.  A temporary restraining order, preliminary injunction and/or permanent injunction compelling Defendants to return and restore the Trade Secrets and/or Confidential Information to Andritz;

D.  A temporary restraining order, preliminary injunction, permanent injunction and/or writ of replevin compelling SMC to immediately cease using and return and restore to Andritz its valuable and specialized custom tools;

E.  Monetary damages, including compensatory damages, disgorgement of amounts by which Defendants were unjustly enriched, exemplary damages, and punitive damages;

F.  Reasonable attorneys' fees and costs incurred in this action pursuant to O.C.G.A. §§ 13-6-11, 10-1-764, and other applicable law; and

G.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**PARKER, HUDSON, RAINER & DOBBS LLP**

By: /s/ Ronald T. Coleman, Jr.
    Ronald T. Coleman, Jr.
    State Bar No. 177655
    Keith R. Blackwell
    State Bar No. 024493

- 35 -

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303                    Attorneys for Plaintiff Andritz Inc.
(404) 523-5300
(404) 522-8409 (facsimile)